STATE of Minnesota, Respondent,

v.

Derek Jay CASSIDY, Petitioner,
Appellant.

No. C2–95–831.

Supreme Court of Minnesota.

Aug. 14, 1997.

Rehearing Denied Sept. 18, 1997.

John M. Stuart, Minnesota State Public Defender, Donald R. McNeil, Bennett, Brown, Ingvaldson, Coaty & McNeil, P.A., Minneapolis, Thaddeus Lightfoot, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Appellant.

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, Michael D. Williams, Marshall County Attorney, Warren, for Respondent.

## OPINION

PAGE, Justice.

On January 19, 1995, Derek Jay Cassidy was convicted by a Marshall County jury of the crime of transporting unstamped packages of cigarettes in violation of Minn.Stat. § 297.11, subd. 5 (1996). Cassidy's trial [1] commenced on January 18, 1995, and was scheduled to last two days. On the morning of the second day, Cassidy failed to appear. He did, however, call the court and indicate that he had been unable to get a ride back to the trial and was stranded on the Roseau River Indian Reservation in Canada, where his home was located. The trial proceeded in his absence and Cassidy was found guilty. The court of appeals held that the trial court abused its discretion when it concluded that Cassidy's absence was voluntary, but upheld the conviction on the grounds that the error was harmless beyond a reasonable doubt. Before this court, Cassidy claims that the trial court abused its discretion and committed prejudicial error when it ordered that the trial proceed in his absence. Because the trial record is inadequate for this court, on review, to make a determination as to whether Cassidy's absence from the trial on the second day was voluntary, we reverse and remand for a new trial.

At Cassidy's trial, the state presented its entire case on the first day, with Cassidy in attendance. After the prosecution rested, the defense called and completed the testimony of its first witness after which the trial was recessed until 9:00 a.m. the next morning. Cassidy returned to his home in Canada that evening to spend the night and to pick up a witness who was to testify on his behalf the next day. When the trial resumed the next morning, Cassidy was not present. At approximately 9:15 a.m. that morning,

---

1. This was Cassidy's second trial in this matter. At his first trial, Cassidy was arrested for, charged with, tried, and found guilty of transporting unstamped cigarettes in violation of Minn.Stat. § 297.11, subd. 5, and presenting false identification in violation of Minn.Stat. § 171.22(3) (1996). The facts underlying Cassidy's arrest and conviction are as follows. On August 6, 1992, the pick-up truck Cassidy was driving in Marshall County pulled off the roadway and stopped on the shoulder. A Minnesota State Patrol trooper observed the truck pull over and stopped to see if he could be of assistance. As he approached the truck, the trooper noticed that neither the driver nor the truck's passenger were wearing their seat belts and, as a result, the trooper asked Cassidy for his driver's license. The license Cassidy presented had the name Des-

mond L. Anderson on it. The passenger presented identification bearing the same name. When pressed, Cassidy explained to the trooper that he did not have a driver's license in his own name and had presented his passenger's license. Ultimately, the trooper asked Cassidy for permission to search the pick-up truck and Cassidy consented. Under a tarp covering the bed of the pick-up truck the trooper found 20 cases of cigarettes which did not bear the appropriate tax stamps. On appeal, the court of appeals reversed and remanded for a new trial based on its conclusion that the trial court erred in precluding Cassidy from presenting evidence that the cigarettes were being transported in interstate commerce, which is not a violation of Minn.Stat. § 297.11, subd. 5. This court declined review.

Cassidy called the courthouse, and a telephone conference was arranged between Cassidy, his attorney, the prosecutor, and the trial judge. The judge gave Cassidy an opportunity to explain his absence from court, and Cassidy indicated that the car he had borrowed to travel to the trial on the first day and which he had previously arranged to use to return to the trial on the second day was unavailable because of an emergency in the car owner's family. According to Cassidy, he tried until 3 a.m. that morning to arrange other transportation, but was not successful. Further discussion took place and, in the end, Cassidy stated, "[y]our Honor, for the record I want to be there for the whole trial." The trial court ordered that the trial proceed with Cassidy absent, and the jury found him guilty.

■ The basic principles governing the right of an accused person to be present at trial are well-settled. "[A]n accused has a [constitutional] right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975). The right to be present during trial is based on the confrontation clause of the Sixth Amendment[2] and is applicable to the states through the Fourteenth Amendment. *State v. Grey*, 256 N.W.2d 74, 76 (Minn.1977). The right to be present is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985).

■ Like any constitutional right, the right to be present at trial may be waived by the accused. *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); *see also Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) ("The right at issue is the right to be present, and the question becomes whether that right was effectively waived by [defendant's] voluntary absence.") "A waiver is an intentional relinquishment of a known right

or privilege, and its validity depends * * * upon the particular facts and circumstances surrounding the case * * *." *State v. Richards*, 456 N.W.2d 260, 264 (Minn.1990). Typically, courts will imply a waiver when a defendant is absent without explanation. *See United States v. Mackey*, 915 F.2d 69, 73 (2d Cir.1990). Courts will also imply a waiver from a defendant's conduct. *Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970). A defendant's "voluntary absence without compelling justification * * * constitutes a waiver of the right to be present." *United States v. Rogers*, 853 F.2d 249, 252 (4th Cir.1988). However, in determining whether a constitutional right has been waived, "courts must indulge every reasonable presumption against the loss of constitutional rights." *Allen*, 397 U.S. at 343, 90 S.Ct. at 1060.

The Minnesota Rules of Criminal Procedure also speak directly to the issue before us. Rule 26.03 requires that a defendant must be present at trial. Minn. R.Crim. P. 26.03, subd. 1(1). The right to be present under this rule is broader than those rights guaranteed by either the Sixth or Fourteenth Amendments. *State v. Ware*, 498 N.W.2d 454, 457 (Minn.1993). The rule specifically states that the "defendant shall be present * * * at every stage of the trial * * * except as otherwise provided by these rules." Minn. R.Crim. P. 26.03, subd. 1(1). One of the exceptions found in subdivision 1(2) of the same rule, states:

> The further progress of a trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to waive the right to be present whenever:
>
> 1. a defendant voluntarily and without justification absents himself or herself after trial has commenced * * *.

Minn. R.Crim. P. 26.03, subd. 1(2).

■ We review a decision to proceed with trial *in absentia* under an abuse-of-discretion standard, and we will not disturb the trial court's factual findings unless clear-

---

**2.** "In all criminal prosecutions, the accused shall enjoy the right to * * * be confronted with the witnesses against him; to have compulsory pro-

cess for obtaining witnesses in his favor, and to have the assistance of counsel for his defence." U.S. Const. amend. VI.

ly erroneous. *See United States v. Camacho,* 955 F.2d 950, 953 (4th Cir.1992); *Mackey,* 915 F.2d at 72. A trial court has "only a narrow discretion in deciding whether to proceed with a trial when the defendant is [absent] because the right to be present at one's own trial must be carefully safeguarded." *United States v. Benavides,* 596 F.2d 137, 139 (5th Cir.1979) (internal quotation marks omitted). In order to determine whether the trial court has abused its discretion, there must be an adequate record for this court to review. *See Local Oil Co., Inc. v. City of Anoka,* 303 Minn. 537, 539, 225 N.W.2d 849, 851 (Minn.1975) (stating that when the record is inadequate to permit meaningful appellate review, interests of justice are best served by remanding case for reconsideration upon facts in record and such additional evidence as the parties may produce).

■ Clearly, a defendant bears the burden of showing that his or her absence from trial was involuntary. That burden is a heavy one to meet, and rightly so. Our judicial system could not function if defendants were allowed to pick and choose when to show up for trial. However, when the constitutional right to be present at trial is involved, the trial court must be extremely cautious in determining whether that absence is voluntary and should set forth with specificity its rationale for finding the right waived and the facts supporting that rationale. *See, e.g., Mackey,* 915 F.2d at 73–74 (finding reversible error where the trial court continued the trial when the defendant's absence was not clearly voluntary).

■ To determine whether the trial court properly exercised its discretion in finding that Cassidy voluntarily waived his right to be present at the entirety of his trial, we must examine the court record. On the limited facts one can glean from the record

before us, it is clear that Cassidy's decision to leave the jurisdiction by going home for the evening and to pick up a witness for the next day's proceedings was voluntary, but the record is not clear that his failure to return for trial the next morning was voluntary and without justification. Voluntarily leaving the jurisdiction of the court, with plans to return, in order to go home [3] during the evening while the trial is in recess and to pick up a witness who is to testify at trial the next day, only to discover that you have lost your transportation back to the trial, is not necessarily the same as voluntarily absenting yourself from the trial.

Here, while the trial court discussed the voluntariness of Cassidy's return home, it failed to set forth with sufficient specificity its rationale for finding that Cassidy voluntarily and without justification failed to return for the remainder of the trial and therefore waived his right to be present on the second day of his trial. The trial court also failed to set forth sufficient facts to support that finding. Thus, the problem we are faced with in this case is that the record before us is insufficient to make a determination as to the voluntariness of and lack of justification for Cassidy's failure to return for the remainder of the trial.[4] Absent an adequate record, it is virtually impossible for this court, on review, to determine whether Cassidy voluntarily waived his right to be present or whether the trial court abused its discretion in going forward with the trial.

In reaching this conclusion, we do not mean to condone Cassidy's failure to be present on the second day of his trial. Nor do we fail to appreciate "the additional burdens, waste and expense inflicted upon the court, government [and] witnesses * * * and the public's interest in seeing the accused brought to trial as well as the court's responsibility to do so speedily." *United States v.*

---

3. The fact that a defendant's home is located outside the court's jurisdiction should not in and of itself preclude the defendant from going home for the evening. Further, we note that there is nothing in this record which remotely suggests that this defendant was attempting to flee the court's jurisdiction.

4. The dissent makes a compelling argument that the record is more than adequate to support the

conclusion that Cassidy voluntarily left the jurisdiction of the court after the first day of trial. The problem with this argument is that the question we must answer is not whether Cassidy voluntarily left the court's jurisdiction; the question we must answer is whether Cassidy voluntarily and without justification failed to return for the remainder of the trial.

*Pastor,* 557 F.2d 930, 934 (2d Cir.1977). Rather, our conclusion signifies that when a constitutional right as fundamental as the right to be present at one's own trial is implicated, the trial court has an obligation to safeguard that right,[5] and when a court concludes that the right is voluntarily waived, it must set forth with some specificity its rationale for finding the constitutional right voluntarily, and without justification, waived and the facts supporting the rationale so that its conclusion can be properly reviewed on appeal. Therefore, we reverse the court of appeals and remand for a new trial.

TOMLJANOVICH, Justice, dissenting.

I vigorously dissent. In my view, the record is more than adequate to demonstrate that the trial court properly exercised its discretion in proceeding with the trial in the absence of the defendant.

The majority concedes that a defendant waives his or her constitutional right to be present at trial when the defendant voluntarily and without justification absents him or herself from the trial. The majority also concedes that the defendant bears the burden of showing that his or her absence from the trial was involuntary. Using the majority's own reasoning, therefore, Cassidy had the burden of establishing, on the record and to the satisfaction of the trial court, sufficient facts to support his claim that his absence was involuntary. Any failure to adequately establish such a record must necessarily result in a ruling against the defendant. Instead, the majority somehow reaches the conclusion that an inadequate record required the trial court to rule in the defendant's favor.

Even accepting as true the majority's contention that an inadequate record must result in a ruling favorable to the defendant, the facts show that the record was anything but inadequate. The record established that the state presented its entire case on the first of two days set aside by the court, with Cassidy present in the courtroom. It also established that when court reconvened on the second day, Cassidy did not appear. The record also established that Cassidy did not contact the court until about 9:15 a.m., at which time he arranged a telephone conversation between himself, his attorney, the prosecutor, and the judge. According to the record, the judge gave Cassidy an opportunity to explain his reason for not being in court, and Cassidy stated that on the previous evening he had driven an hour's drive north to pick up a witness. According to the record, Cassidy went on to explain that the car he had borrowed to travel from his home to the courtroom for the first day of trial no longer was available because of an emergency in the car owner's family. Cassidy's attorney then asked Cassidy if he had tried to get another vehicle, and Cassidy stated he had tried until 3 a.m., but was unsuccessful.

After a discussion regarding the rights of a defendant to be present at trial, the record shows that the defense attorney asked Cassidy if he would permit the trial to go forward in his absence. Cassidy first stated that he would, but upon further questioning by the court, Cassidy stated, "Your honor, for the record I want to be there for the whole trial." After Cassidy hung up, his attorney said he believed Cassidy desired to be present in court and that his desire, as evidenced by the telephone conversation, was an informal request for a continuance. The state objected, arguing that Cassidy was aware he was to be present at trial and that there would be no prejudice if the trial proceeded in his absence. Upon these facts, the district court denied Cassidy's motion on the grounds that his absence was voluntary and ordered the trial to proceed.

The record also shows that the court explained its decision as follows:

> [T]he defendant knew and was aware that we were going to start at 9 a.m. today; that he voluntarily left here, went back to Canada, again placing himself outside the jurisdiction of this court, and didn't bother to call us or get a hold of anybody until 9:15 a.m. this morning. This court had, upon the agreement or the understanding with both counsel that this case was going

---

**5.** This is particularly true when, as is the case here, the trial court judge believes that the question of the defendant's guilt is a "close call."

to take two days, committed itself to other matters on Friday, that is tomorrow, and so that we were in a position that if we were to continue it, we were going to continue it for a fairly lengthy time.

It is clear that the record indicates Cassidy attended the first day of trial and was aware that judge, jury, witnesses, and lawyers were ready to continue the second day. The majority does not dispute that the record also shows that Cassidy decided to *voluntarily* leave the area of the trial following the first day. The majority also does not dispute that the record shows that the defendant's lone reason for failing to return to trial was that the car he had planned on using for the trip no longer was available. Yet somehow the majority concludes that the trial court:

> failed to set forth with sufficient specificity its rationale for finding that Cassidy voluntarily and without justification failed to return for the remainder of the trial and therefore waived his right to be present on the second day of his trial. The trial court also failed to set forth sufficient facts to support that finding.

What more could the trial court have done to insure an adequate record without transferring the burden of proving the involuntariness of Cassidy's absence to the state or the court itself?

Given the sufficiency of the record, it would appear that the majority is instead disregarding the trial court's ultimate decision that Cassidy's failure to acquire transportation was not a sufficient justification to qualify his absence as involuntary. As the majority correctly states, however, we review a decision to proceed with a trial in absentia under an abuse-of-discretion standard. *See United States v. Camacho,* 955 F.2d 950, 953

(4th Cir.1992); *United States v. Mackey,* 915 F.2d 69, 72 (2d Cir.1990). As a result, the majority avoids stating that the trial court erred in concluding that Cassidy's excuse was not sufficient to meet his burden of proving his absence to be involuntary. But even taking as true the defendant's contention that he wanted to return for the second day of trial, the fact remains that after the first day of trial, Cassidy voluntarily left not only the county, but the state and country as well. Certainly the trial court was within its discretion to conclude that Cassidy's excuse for failing to return was not sufficient to render his absence involuntary.[1]

Once a trial court properly finds waiver, we must determine whether it appropriately exercised its discretion in concluding that there was a controlling public interest in the continuance of the trial in the absence of the defendant. *Mackey,* 915 F.2d at 72–73; *see also Camacho,* 955 F.2d at 955. A number of factors help to determine if there is a controlling public interest in the continuation of a trial. *United States v. Watkins,* 983 F.2d 1413, 1418–19 (7th Cir.1993) (citing *United States v. Tortora,* 464 F.2d 1202 (2d Cir.), *cert. denied sub nom, Santoro v. United States,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972)). These factors include "the likelihood that the trial can take place with the defendant present, the difficulty of rescheduling, the burden on the government and inconvenience to jurors* * *." *Id.* (Citation omitted).

The majority states that it appreciates "the additional burdens, waste and expenses inflicted on the court, the government [and] witnesses," but I do not believe that the majority fully understands the burdens it has imposed with this ruling. This trial took

---

1. We recognize that a federal appeals court held just the opposite in a case where the district court determined that the criminal defendant's inability to find transportation to the courthouse 110 miles away was an involuntary absence. *Mackey,* 915 F.2d at 75. We conclude, however, that the case is distinguishable. Unlike the defendant in *Mackey,* who had yet to travel to the site of his trial, Cassidy already had appeared at the courthouse for the first day of trial. The difference, although subtle, is determinative in that the defendant in *Mackey* had not voluntarily left the area. The defendant in the instant case,

on the other hand, had chosen to leave the area after the trial had begun. *See* Minn. R.Crim. P. 26.03, subd. 1(2). Consequently, the defendant bore the risk of any unjustified failure to return to the area. As the Supreme Court has stated: It does not seem "consonant with the dictates of common sense that an accused person * * * should be at liberty, whenever he please[s], to withdraw himself from the courts * * * to break up a trial already commenced." *Crosby v. United States,* 506 U.S. 255, 260, 113 S.Ct. 748, 751, 122 L.Ed.2d 25 (1993).

place in a rural county in a huge judicial district. To tell jurors, who might have come to the courthouse from as far away as 60 to 80 miles, that they might have to sit around for part of a day, or that they might have to return another day simply because the defendant voluntarily has left the country in the middle of a trial is intolerable. The jurors might have taken time from their families and their jobs to be present at the trial. That scenario is repeated many times in rural courthouses throughout the state every week. I also note that there are 11 judges trying to do the work in this vast, 17–county judicial district. When a trial cannot be completed on schedule, there is a domino effect in regard to trials and hearings that have been scheduled weeks or months in advance. Witnesses, litigants, jurors and attorneys in other cases are required to try to adjust their schedules, often for proceedings that have been scheduled weeks and months in advance. The record is clear that the judge in the case at bar was not available for a continuance. In addition, Cassidy offered no evidence concerning his ability to return to the area. Given the fact that a jury already had been seated and heard the entirety of the state's case and a portion of the defense's case, it is easy to conclude that an indefinite continuation would have provided both a substantial burden to the government and a serious inconvenience to the jurors.

I recognize that we "must indulge every reasonable presumption against the loss of constitutional rights." *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). I also must recognize, however, that "the defendant cannot take advantage of his own wilful wrong (failing to appear) to defeat the ends of justice, and must be held to have waived, by his misconduct, his right to be present * * *." *State ex rel. Shetsky v. Utecht,* 228 Minn. 44, 48, 36 N.W.2d 126, 128 (1949). As Justice Black wrote in *Allen:*

> [O]ur courts * * * cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly

progress thwarted and obstructed by defendants brought before them charged with crimes.

397 U.S. at 346, 90 S.Ct. at 1062. Based upon the entirety of his conduct, we must presume that Cassidy waived his right to be present for the second day of his trial. His subsequent failure to provide sufficient evidence that his absence was involuntary requires this court to affirm the conviction, and even more importantly, block future criminal defendants from thwarting the efficient advancement of justice.

STRINGER, Justice (dissenting).

I join the dissent of Justice TOMLJANOVICH.

KEITH, Chief Justice (dissenting).

I join the dissent of Justice TOMLJANOVICH.