STATE of Minnesota, Respondent,

v.

Anthony DeWALT, Appellant.

No. A07–1610.

Court of Appeals of Minnesota.

Nov. 4, 2008.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, Thomas N. Kelly, Wright County Attorney, Buffalo, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Rachel Foster Bond, Assistant State Public Defender, St. Paul, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; KLAPHAKE, Judge; and PETERSON, Judge.

## O P I N I O N

KLAPHAKE, Judge.

The state charged appellant Anthony DeWalt by amended criminal complaint with multiple counts of first- and second-degree criminal sexual conduct, kidnapping, and assault. For two first-degree criminal sexual conduct charges under Minn.Stat. § 609.342, subd. 1(c), (e)(i) (2004), the state alleged the element of heinous removal of the victim from one place to another and no safe release, an aggravating factor for sentencing that made those charges punishable by a sentence of life imprisonment under Minn. Stat. § 609.3455, subd. 3 (Supp. 2005). A jury convicted appellant on all charges, except one second-degree assault charge. After appellant waived a sentencing jury, the district court found that the jury's guilty verdict on the kidnapping charge established the heinous element for purposes of sentencing enhancement and sentenced appellant to life imprisonment for first-degree criminal sexual conduct. We reverse appellant's enhanced sentence and remand for resentencing because we conclude that the district court lacked authority to impose an enhanced life sentence when appellant was not charged by indictment. We otherwise affirm appellant's conviction, rejecting his claims on the constitutional right to be present at trial, sufficiency of the evidence of sexual penetration, and the issues raised in his pro se brief.

## FACTS

In the early morning hours of August 14, 2005, H.R., then 17 years old, was sexually assaulted by appellant at a late-night gathering at the Rockford residence of J.L. in Wright County. The state charged appellant by amended criminal complaint with multiple counts of criminal sexual conduct and assault, and one count of kidnapping.

During voir dire, appellant elected not to be present in the courtroom after having several outbursts in court, which he claimed were due to medical reasons. After appellant was found not to be taking his anti-depressant medication, he began taking the medication but declined to appear in court again. The court issued an order finding that appellant's "stated preference is to remain in jail, as opposed to the courtroom, during trial proceedings." Thereafter, appellant appeared only to decline to testify and to hear the reading of the verdict.[1]

After the jury was sworn, appellant moved to dismiss any criminal charges that were subject to a possible sentence of life imprisonment, on the basis that such crimes can be prosecuted only by indictment. The district court took the motion under advisement and denied the motion at the end of trial.

At trial, H.R. provided the following testimony regarding the sexual assault. She testified that she and a girlfriend had been drinking in the early evening at the girlfriend's home before they attended the Rockford River Days Festival, and that she became drunk after consuming about four mixed drinks. They joined other friends at the festival, including J.J., then 23 years old. During the evening, H.R. and J.J. admittedly engaged in consensual oral sex at a local park.

After the festival, H.R. and J.J. went to Woody's Bar, where they became acquain-

---

1. At pretrial, the district court had ordered appellant to undergo a mental evaluation, and the examiner concluded that appellant was feigning mental illness or "malingering." The examiner's report states that appellant has a history of feigning illness to avoid prosecution.

ted with J.L., a 31–year–old real estate developer, and his friend, appellant, who had worked for J.L. for several months as a handyman. Appellant invited a small group of people from Woody's Bar to J.L.'s home, including H.R. and J.J.; appellant drove J.L.'s vehicle because J.L. was too drunk to drive. According to H.R., she continued to have a "buzz" from drinking but was not intoxicated when they arrived at J.L.'s home.

Eventually, only appellant, J.L., J.J., and H.R. remained at the residence. H.R. testified that appellant had made some advances towards her during the evening, including commenting on her looks and offering J.J. $45 to allow him to bathe with H.R. In response to appellant's behavior, H.R. told J.J. that she wanted to go home. As she waited on the porch for J.J., appellant assaulted her.

H.R. testified that the assault occurred as follows: appellant approached her while she waited on the porch and began kissing her, which she rebuffed. Appellant then grabbed her by the hair and dragged her down a slope, tripping her and causing her nylon slacks to come off as she was pulled through the dirt. H.R. screamed, but appellant told her to "shut up" if she was "smart," which she perceived as a threat to her life. When H.R. screamed louder, appellant hooked his finger into her mouth and continued to drag her. Appellant then physically overpowered H.R. and vaginally penetrated her, choking her during the assault to stop her from screaming. J.J., and later J.L., intervened, and H.R. escaped during the second confrontation. She ran down the road away from J.L.'s home, where she was picked up by a newspaper deliverer.

According to J.J.'s trial testimony, he heard H.R.'s screams and ran around the side of the house to find out what was going on. He saw appellant and H.R.

having sexual intercourse on the ground, concluding that the act was not consensual because appellant was choking H.R. J.J. confronted appellant, and they became involved in an altercation that resulted in J.J.'s retreat, at which time he decided to run to a neighbor's house to seek assistance. As J.J. was leaving, he observed appellant return to H.R. and drag her by her hair through the front yard.

According to J.L.'s testimony, he came upon H.R. outside his residence. He was surprised that she was wearing no slacks, and he helped her towards the house. Appellant then approached them and began to assault H.R. J.L. intervened, but appellant attempted to jab him numerous times with a pair of scissors. Appellant also stopped J.L. from making an emergency phone call. During appellant's encounter with J.L., H.R. ran away.

As a result of the assault, H.R. had numerous cuts and scrapes all over her body, consistent with her testimony about the assault. Medical testimony was conflicting on whether injuries specifically related to the sexual assault demonstrated whether she consented to it.

## ISSUES

1. Did the trial court err by allowing the trial to proceed with appellant absent from the courtroom?

2. Was the evidence sufficient on the element of sexual penetration to convict appellant of first- and third-degree criminal sexual conduct?

3. Did the district court have the authority to impose an enhanced sentence of life imprisonment when the state failed to prosecute appellant by indictment?

4. Do the issues raised in appellant's pro se brief merit any relief?

## ANALYSIS

### I.

■ Appellant first claims that the district court abused its discretion by failing to continue his trial to allow him to consult with medical personnel and have his medications adjusted so that he could fully participate in trial. Appellant relies on constitutional provisions and rules of criminal procedure that entitle him to be present during trial. *See* U.S. Const. amend. VI, XIV; Minn. Const. art. I, §§ 6, 7; Minn. R.Crim. P. 26.03, subd. 1(1) (providing that criminal defendant "shall be present" "at every stage of the trial"); *see also State v. Cassidy*, 567 N.W.2d 707, 709 (Minn.1997). A defendant may waive these rights if he "voluntarily and without justification absents himself or herself after trial has commenced...." Minn. R.Crim. P. 26.03, subd. (2); *Cassidy*, 567 N.W.2d at 709. On appeal, the court "review[s] a decision to proceed with trial *in absentia* under an abuse-of-discretion standard, and ... will not disturb the trial court's factual findings unless clearly erroneous." *Cassidy*, 567 N.W.2d at 709–10. Regarding the burden of proof on this issue, the supreme court has stated:

> Clearly, a defendant bears the burden of showing that his or her absence from trial was involuntary. That burden is a heavy one to meet, and rightly so. Our judicial system could not function if defendants were allowed to pick and choose when to show up for trial. However, when the constitutional right to be present at trial is involved, the trial court must be extremely cautious in determining whether that absence is voluntary and should set forth with specificity its rationale for finding the right waived and the facts supporting that rationale.

*Id.* at 710.

The record shows that after nearly a week of voir dire, appellant, who had been found to be feigning mental illness in his pretrial mental evaluation, began having outbursts in the courtroom, including asking for a change of venue, asking to be taken out of the courtroom, and asking for a mistrial. Following a recess, appellant attributed his outbursts to elevated blood pressure, and the court granted a second recess to have appellant's blood pressure checked. Although appellant had not taken his anti-depressant medication, which was discretionary, his blood pressure was found to be satisfactory. After he was given his anti-depressant medication, appellant, in response to being unable to see a doctor immediately, told the court, "I don't want to be present from here on out." On these facts, the court found that appellant had voluntarily and without justification chosen to absent himself from trial. The court also offered appellant the opportunity to be present at any time during the trial.

■ We observe no error in the district court's finding that appellant's decision not to appear at trial was voluntary. Appellant has a history of feigning illness to disrupt criminal proceedings, and the facts do not suggest that illness prevented appellant from being present at trial. The district court's factual findings are supported by the record, and therefore not clearly erroneous, and we conclude that its decision to proceed at trial without appellant being present was not an abuse of discretion.

### II.

■ Appellant next claims that evidence on the element of sexual penetration was insufficient to prove that he committed either first- or third-degree criminal sexual conduct. In considering an insufficiency of the evidence claim, this court "must assume that the jury believed the state's

witnesses and disbelieved any evidence to the contrary" and that the jury, while giving "due regard" to the requirements of proof beyond a reasonable doubt and the presumption of innocence, could reasonably have reached a guilty verdict. *State v. Taylor,* 650 N.W.2d 190, 206 (Minn. 2002). Appellate review is limited to consideration of whether the evidence, viewed in the light most favorable to the jury's verdict, was sufficient to support the verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989); *State v. Davis,* 656 N.W.2d 900, 905 (Minn.App.2003), *review denied* (Minn. May 20, 2003).

Sexual penetration is an element of the offenses of first- and third-degree criminal sexual conduct. *See* Minn.Stat. §§ 609.342, subd. 1 (2004); 609.344, subd. 1 (2004). "Sexual penetration" includes "sexual intercourse" and "any intrusion however slight into the genital or anal openings." Minn.Stat. § 609.341, subd. 12 (2004).

Appellant contends that the evidence of sexual penetration was insufficient because there was a "notable lack of physical evidence establishing penetration" by appellant; the DNA evidence supported only a finding of penetration by J.J.; no witness testified to seeing penetration of H.R. by appellant; and H.R.'s testimony was not credible due to her intoxication and other inconsistencies in her testimony. But the record, when viewed in the light most favorable to the verdict, fully supports the jury's conclusion that appellant sexually penetrated the victim. First, H.R. testified that sexual penetration occurred. Although her testimony included inconsistencies on precisely how many times penetration occurred, appellant never wavered in her assertion that it did occur. Second, her testimony was corroborated by eyewitnesses, who saw other aspects of the assault, and by other witnesses who observed her disheveled and half-naked condition just after the assault. J.J. testified that he observed appellant on top of H.R., pelvis to pelvis, with her wearing only a bra and no pants, and with appellant's hands around her neck, and that he concluded that appellant was forcibly having sex with H.R. J.L. testified that when he later came upon appellant and H.R., appellant had pinned H.R. to the ground with his knee on her head, and she was wearing no pants.

Although appellant suggests that the state failed to offer physical evidence of penetration, such as the existence of appellant's DNA on vaginal swabs taken from H.R., this evidence does not contradict H.R.'s testimony that appellant had just begun to have intercourse with her and did not ejaculate. Further, although appellant challenges H.R.'s testimony as clouded by alcohol, her descriptions of the assault and the events preceding it were consistent and supported by the testimony of others. For these reasons, we conclude that the evidence is sufficient to prove beyond a reasonable doubt that appellant sexually penetrated H.R.

## III.

Appellant argues that his enhanced sentence of life imprisonment for the first-degree criminal sexual conduct conviction should be reversed because the state did not prosecute him by indictment as required by law. Minn.Stat. § 609.3455, subds. 1(d), 3(a) (Supp. 2005), mandates a life sentence for an egregious first-time offender whose conviction includes a "heinous element." A heinous element exists when "the offender, without the complainant's consent, removed the complainant from one place to another and did not release the complainant in a safe place." *Id.,* subd. 1(d)(8). The district court found, based on the jury verdict, that this

had occurred, thus authorizing a life sentence.

■ Minn. R.Crim. P. 17.01 requires that "[a]n offense which may be punished by life imprisonment shall be prosecuted by indictment[.]" Appellant was convicted of two counts of first-degree criminal sexual conduct that were subject to a maximum sentence of life imprisonment because of the heinous element. The history of this rule evinces its constitutional underpinnings, as it is based on a Fifth Amendment requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Supreme Court limited application of the Fifth Amendment requirement to federal courts in *Hurtado v. California,* 110 U.S. 516, 534–35, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884).

In Minnesota, the grand jury provision in the state constitution initially paralleled that of the Fifth Amendment, but later amendments removed the language requiring charging by indictment of crimes subject to a possible life sentence while continuing to offer broad due process protections to a defendant. *See State v. Ronquist,* 600 N.W.2d 444, 448 (Minn.1999) (providing detailed history of Minnesota law on serious offenses subject to charging by indictment). Following removal of the mandatory indictment language from the state constitution, Minnesota codified the requirement, first by statute and now by rule, that crimes subject to a life sentence must be charged by indictment. *Id.* The plain language of the current rule would seem to require that appellant's offense "be prosecuted by indictment," because it

"may" be punished by life imprisonment. Minn. R.Crim. P. 17.01.

However, in *Ronquist,* the supreme court affirmed a sentence of life imprisonment for an egregious offense of first-degree criminal sexual conduct when the defendant was not charged by indictment consistent with rule 17.01. *600 N.W.2d* at 450. There, the supreme court ruled that because the sentencing enhancement provisions of Minn.Stat. § 609.346 (1996) (repeat sex offender sentencing enhancement statute), constituted mere sentencing considerations that did not need to be proved like elements of an offense at trial, the criminal charge did not need to be prosecuted by indictment. *Id.* at 450.[2] Appellant claims that *Ronquist* is distinguishable because the enhancement factor there was a prior conviction, which did not need to be proved beyond a reasonable doubt, while here the enhancement factor "encompassed the elements of kidnapping," which had to be proved beyond a reasonable doubt.

We agree with appellant that *Ronquist* is not controlling. Since release of *Ronquist,* the Supreme Court has expanded the constitutional protections that apply to a criminal defendant at sentencing in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and their progeny. These cases require that any fact that increases punishment beyond that prescribed by statute must be tried to a jury and proved beyond a reasonable doubt. *Blakely,* 542 U.S. at 301–03, 124 S.Ct. at 2536–37; *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63. *In Apprendi,* the Supreme Court characterized a sen-

---

**2.** In 1998, the legislature amended the enhancement statute at issue in *Ronquist* to allow imposition of a mandatory life sentence for a repeat sex offender only if "the person has been indicted by a grand jury." Minn. Stat. § 609.109, subd. 3(1) (1998). The statute at issue here does not include similar language.

tencing enhancement factor as the "functional equivalent of an element" because it is used to support an increase in sentence beyond the statutory maximum that was authorized when the factfinder found the defendant guilty of specific elements that constituted a criminal offense. 530 U.S. at 494 n. 19, 120 S.Ct. at 2365 n. 19. Although these cases are not precisely on point because they address the Sixth Amendment right to be tried by a jury and the issue here is the right to be charged by indictment, we view them as instructive. The supreme court's *Apprendi* and *Blakely* decisions have undermined the *Ronquist* court's distinction between sentencing considerations and elements of the offense.

As in *Apprendi* and *Blakely,* appellant's sentence was enhanced by a factor that was at least the "functional equivalent" of an element of the underlying offense, because it was used to enhance his sentence beyond the maximum sentence otherwise allowed by statute—30 years. *See* Minn. Stat. § 609.342, subd. 2(a) (2004). Furthermore, the enhancement statute itself, which was enacted following *Apprendi* and *Blakely,* uses the term "heinous element." Minn.Stat. § 609.3455, subds. 1(d), 3(a); *see* Minn. Laws 2005, ch. 136, art. 2 § 21. We must presume that the legislature was aware of *Apprendi* and *Blakely* and intended this "heinous element" to be determined by a jury based on proof beyond a reasonable doubt. Thus, the statutory language further demonstrates the relevance of the charge in sentencing law imposed by *Apprendi* and *Blakely* and distinguishes this case from *Ronquist.* As such, under the clear language of rule 17.01, a charge for this offense should have been made by indictment in order to support the imposition of an enhanced sentence of life imprisonment.

■ Federal case law indicates that the failure to charge by indictment may be jurisdictional or may limit a court's authority to impose an enhanced sentence. In *United States v. Macklin,* 523 F.2d 193, 196 (2nd Cir.1975), a federal appellate court affirmed dismissal of a defective indictment issued by a grand jury whose term had been improperly extended. There, the court ruled that the indictment was a "nullity" because "the absence of an indictment is a jurisdictional defect which deprives the court of its power to act." *Id.*; *see Ronquist,* 600 N.W.2d at 447 ("Where an indictment or presentment by a grand jury is required by constitutional or statutory provisions in the case of a specified type of crime, a prosecution in any other mode is unauthorized and an absolute nullity for want of jurisdiction"). This case is distinguishable from *Macklin,* however, because the district court had subject-matter jurisdiction over appellant's criminal matter but merely lacked authority to enhance his sentence without complying with rule 17.01. *See United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) ("a court's power to hear a case can never be forfeited or waived"); *United States v. Beasley,* 495 F.3d 142, 147–48 (4th cir.2007) (in holding that government's alleged failure to comply with indictment requirements before enhancing a sentence for a repeat drug offender, court concluded that indictment's failure to include quantity of drugs involved in crime did not divest court of jurisdiction, because "once a court has subject matter jurisdiction over a case it does not lose that jurisdiction by exceeding the court's remedial authority"). Thus, the proper remedy here is not to vacate the conviction but to reverse the imposition of the enhanced sentence. *See Beasley,* 495 F.3d at 148 (stating that failure to comply with indictment requirement bars court's

authority to enhance sentence unless waived by defendant).

For all of these reasons, we conclude that the district court lacked authority to enhance appellant's sentence for first-degree criminal sexual conduct by imposing a life sentence. We therefore reverse appellant's sentence and remand for resentencing.

## IV.

Appellant submitted a one-page, handwritten pro se brief in which he claims that there are discrepancies in witness statements; he challenges the credibility of witnesses based on their intoxication and pending criminal charges; and he suggests that J.L., J.J., and H.R. "used racial overtone[s] on their tape[d] statement." Because these arguments are either fully addressed in the public defender's appellate brief, are dependent on facts not in evidence, or have no apparent import, and none are supported by any legal argument or citation to authority, this court declines to address them. *See State v. Bartylla,* 755 N.W.2d 8, 22–23 (Minn.2008) (deeming

as waived criminal appellant's pro se arguments where they are "lacking in supportive arguments and/or legal authority, and because no prejudicial error 'is obvious on mere inspection' ").

## DECISION

Because the district court did not err in holding appellant's trial without appellant being present in the courtroom, the evidence was sufficient to support the verdict, and because appellant's pro se arguments are without merit, we affirm his conviction. We reverse appellant's sentence and remand for resentencing because the enhancement of his sentence was not charged by indictment as required by law.

**Affirmed in part, reversed in part, and remanded.**