STATE OF MINNESOTA

IN SUPREME COURT

A23-1919

Court of Appeals                                                                                    Hennesy, J.

State of Minnesota,

                    Respondent,

vs.

                                                                                            Filed: May 20, 2026
Steven Douglas Nelson,                                                       Office of Appellate Courts

                    Appellant.

—————————————

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Jeffrey R. Edblad, Isanti County Attorney, Nicholas J. Colombo, Assistant Isanti County Attorney, Cambridge, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota; and

Paul J. Maravigli, Special Assistant Public Defender, Minneapolis, Minnesota, for appellant.

—————————————

S Y L L A B U S

The district court did not plainly err in admitting a transcript of an adverse witness's prior testimony at defendant's criminal trial without the defendant's personal waiver of his Sixth Amendment confrontation right.

Affirmed.

OPINION

HENNESY, Justice.

Appellant Steven Douglas Nelson asks us to reverse his attempted second-degree murder, first-degree assault, and second-degree assault convictions because he did not personally waive his right to confront an adverse witness before the State submitted a transcript of the witness's prior testimony against Nelson at trial. Nelson argues that the district court plainly erred by treating his attorney's agreement to admit the witness's prior testimony as a valid waiver of Nelson's confrontation rights guaranteed by the Sixth Amendment to the United States Constitution. The court of appeals rejected this argument, holding that any error by the district court was not plain because no binding authority required the district court to secure the defendant's personal waiver in addition to his attorney's waiver under these circumstances. We agree with the court of appeals and, accordingly, affirm.

## FACTS

This appeal arises from Nelson's second trial (following a prior mistrial) for assaulting T.T. on an Isanti County dirt road on November 19, 2020. At both trials, T.T. testified that he and two men, Nelson and D.A., left a local junkyard together around 3:00 a.m. that morning. T.T. thought they were headed to a nearby gas station for food and cigarettes. Instead, Nelson drove to a remote minimum-maintenance road. All three men exited the truck, purportedly to determine whether the road was passable. But as T.T. turned around to return to the vehicle, he was struck twice in the face with a metal object, knocking him to the ground, where he was struck on the head several more times. Nelson

2

and D.A. fled in the truck, leaving T.T. alone and bleeding. T.T. survived, but his injuries required 16 staples on the back of his head and 32 stitches on the inside of his mouth.

The State ultimately charged Nelson with attempted second-degree murder under Minn. Stat. § 609.17, subd. 1 (attempt), and Minn. Stat. § 609.19, subd. 1 (second-degree intentional murder); first-degree assault under Minn. Stat. § 609.221, subd. 1; and second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1.[1] At Nelson's first trial, the State relied primarily on T.T.'s testimony to establish the above facts, but also called D.A. to corroborate T.T.'s testimony. D.A. testified that he accompanied T.T. that night and that he saw and heard Nelson strike T.T. Nelson's counsel cross-examined D.A., focusing on his prior inconsistent statements to law enforcement, his drug use the evening of the assault, and inconsistencies between T.T.'s and D.A.'s testimony as to whether the two communicated with each other following D.A.'s arrest.

Nelson's first trial ended in a mistrial after the jury deadlocked on all counts. His second trial proceeded much like the first, but the State did not present two witnesses from the first trial, D.A. and Dr. Sandefur, who treated T.T. at the hospital.[2]

---

[1]     The State also charged Nelson with an additional count of each of these offenses under an aiding-and-abetting theory of criminal liability. The court of appeals reversed Nelson's aiding-and-abetting convictions, concluding they were included offenses of the principal crimes under Minnesota Statutes section 609.04. *State v. Nelson*, No. A23-1919, 2025 WL 752346, at *10 (Minn. App. Mar. 10, 2025). That part of the court of appeals' decision is not before us.

[2]     The State's failure to present Sandefur at the second trial is not at issue. We consider only the admission of D.A.'s prior testimony in Nelson's second trial here.

Throughout the four-day second trial, the parties repeatedly conferred with the court about the State's efforts to produce D.A. for in-person testimony. On the second day, the State arranged to have D.A. served with a subpoena. The court instructed the prosecutor to file the subpoena and service information once D.A. was served, but also to file the transcript of D.A.'s prior trial testimony. The State agreed but suggested that the court could deem D.A. unavailable even without a subpoena "based upon the State's representation of efforts made."[3] Defense counsel responded that he had no objection to proceeding in that manner, noting that D.A.'s prior testimony was given under oath.

Sandefur also failed to appear at the second trial. The parties therefore stipulated to admitting T.T.'s medical records in lieu of Sandefur's in-person testimony. Before admitting the medical evidence, the court asked defense counsel if he had conferred with Nelson about the effects of that stipulation. Counsel replied that he had, and that he had also briefly explained to Nelson his "strategic reason" for the stipulation. The court then addressed Nelson directly, asking if he understood that the stipulation would constitute a waiver of his right to demand Sandefur's in-person testimony subject to cross-examination before the jury. Nelson indicated that he did.

By the end of the colloquy regarding Sandefur's failure to appear and admitting T.T.'s medical records, D.A. had still not appeared in court to testify. The prosecutor proposed to have D.A.'s prior testimony, including cross-examination, read to the jury in lieu of live testimony. Nelson's counsel responded: "Your Honor, I agree with this, we

---

[3]     The record is unclear as to whether the State in fact served D.A. with a subpoena.

4

can—we should be moving forward at this time with that process." The State formally introduced D.A.'s transcript as an exhibit and moved to have it read into evidence. Defense counsel again agreed, stating: "Your Honor, based on the conversations that is my understanding of how we'll be going. Lastly, I would also note based on our previous conversations that the testimony [the jurors will] be hearing from that day was also provided under oath." The district court did not question Nelson personally before admitting D.A.'s prior testimony.

The jury found Nelson guilty as charged. The district court entered judgments of conviction and later sentenced Nelson to 240 months in prison. Nelson appealed his convictions, arguing, among other things, that the district court violated his constitutional right to confront adverse witnesses by admitting D.A.'s prior testimony. Specifically, Nelson claimed that the district court plainly erred by admitting D.A.'s testimony because Nelson himself never personally waived his right to confront D.A.[4]

The court of appeals rejected this argument, holding that any error by the district court was not plain. *State v. Nelson*, No. A23-1919, 2025 WL 752346, at *5 (Minn. App. Mar. 10, 2025). In a unanimous opinion, the court of appeals determined that Nelson "provided no binding authority to support his position that a defendant must personally

_____

[4]     As discussed below, under *Crawford v. Washington*, a prior testimonial statement is admissible if the witness is *unavailable* to testify and the witness's statement was previously subject to cross-examination. 541 U.S. 36, 68 (2004). Thus, the district court could have erred with respect to the waiver only if D.A. was *available* to testify at Nelson's second trial. Here, however, the district court did not expressly find D.A. unavailable, and the State conceded at oral argument that it did not establish D.A.'s unavailability.

5

waive the right to confrontation." *Id.* at *4. Agreeing there was no such binding authority, the court concluded "the alleged error is not otherwise clear or obvious." *Id.* The court further noted that Nelson's position was "in tension" with our statement in *State v. Caulfield*, 722 N.W.2d 304, 311 (Minn. 2006), that "confrontation rights are not among those (right to a jury trial and right to counsel) that require an affirmative waiver in writing or on the record," as well as our statement in *State v. Trifiletti*, 6 N.W.3d 79, 94 (Minn. 2024), that "[t]he right to confrontation … may be waived, including by failing to object to the offending evidence." *Nelson*, 2025 WL 752346, at *4. Nelson petitioned for review, which we granted.

**ANALYSIS**

Nelson asserts that the Sixth Amendment confrontation right may be waived only by the defendant's personal, on-the-record waiver, and that the district court committed reversible error when it failed to obtain such a waiver.[5] We review a Confrontation Clause challenge to a district court's admission of prior testimony de novo. *State v. Tate*, 985 N.W.2d 291, 298 (Minn. 2023). But because neither defense counsel nor Nelson himself objected to the district court's decision to admit D.A.'s prior testimony into

---

[5] Nelson also asserts that admitting D.A.'s prior testimony without securing a personal waiver violated his confrontation rights under the Minnesota Constitution. *See* Minn. Const. art. 1, § 6 (guaranteeing the accused "the right to be confronted with witnesses against him"). Minnesota's Confrontation Clause "contains virtually identical language" to that of the Sixth Amendment, *Caulfield*, 722 N.W.2d at 306 n.1, and "[w]e apply the same analysis under both Confrontation Clauses." *State v. Gilleylen*, 993 N.W.2d 266, 278 (Minn. 2023). Nelson has not argued that Minnesota's Constitution provides greater protections here than the Sixth Amendment, and, given the limitations of our plain-error doctrine, we decline to consider that question here.

evidence at trial, we may not consider this alleged error unless Nelson's claim satisfies the plain-error exception to our forfeiture doctrine. *See, e.g.*, *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008) (observing that we apply the plain-error analysis to a constitutional challenge or evidentiary question that has been otherwise forfeited by a failure to object). The plain-error exception allows an appellate court to review an error that was not objected to at trial if the district court committed "(1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (citing *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)). Even if Nelson satisfies these three prongs, we provide relief only if failure to do so would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022).

We need not decide in the first instance whether there was error; it is sufficient, for purposes of our plain-error analysis, to determine that any alleged error was not *plain* from preexisting case law, rules, or standards of conduct. *See State v. Manley*, 664 N.W.2d 275, 283 (Minn. 2003) (noting that we may address the prongs of the plain-error analysis in any order). An error is "plain" only if it is clear or obvious "under current law." *Johnson*, 520 U.S. at 467. This "is typically established if the error contravenes case law, a rule, or a standard of conduct." *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017) (citation omitted) (internal quotation marks omitted). Here, Nelson alleges that the district court committed plain error by admitting D.A.'s prior testimony at Nelson's second trial without obtaining a personal waiver from Nelson in violation of the Confrontation Clause. To address whether the district court *plainly* erred, we must

7

determine whether waiving Sixth Amendment confrontation rights *clearly* requires a defendant's personal waiver.

The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right "to be confronted with the witnesses against [them]" at trial. U.S. Const. amend. VI. The United States Supreme Court has long maintained that face-to-face confrontation is "essential to a fair trial in a criminal prosecution" because it is critical to the jury's assessment of witness credibility. *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). Face-to-face confrontation gives a defendant:

> an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Maryland v. Craig*, 497 U.S. 836, 845 (1990) (quoting *Mattox v. United States*, 156 U.S. 237, 242–43 (1895)).

In *Crawford v. Washington*, the Supreme Court recognized additional protections under the Confrontation Clause that led it to overrule prior cases allowing admission of testimonial hearsay evidence[6] that had not been subjected to cross-examination "upon a mere finding of reliability." 541 U.S. 36, 50–51, 60–61. In doing so, the Court stated that

---

[6] "Testimonial hearsay" generally refers to statements made outside the current proceeding and "under circumstances which would lead an objective [declarant] reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51–52. It could include out-of-court statements made, for example, in affidavits, police interrogations, or prior testimony, *see id.*, if "the primary purpose of the [statements] is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

the Confrontation Clause requires "that reliability be assessed in a *particular manner*: by testing in the crucible of cross-examination." *Id.* at 61 (emphasis added). Accordingly, the Court held that testimonial hearsay evidence is categorically inadmissible against a criminal defendant unless (1) the adverse witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness's testimony, regardless of external indicia of reliability. *Id.* at 68–69.[7]

Still, the confrontation right is "not absolute." *Coy*, 487 U.S. at 1020; *Tate*, 985 N.W.2d at 297. Even "[t]he most basic rights of criminal defendants … are subject to waiver." *New York v. Hill*, 528 U.S. 110, 114 (2000) (alteration in original) (citation omitted) (internal quotation marks omitted). "Waiver is an intentional relinquishment of a known right or privilege, and its validity depends … upon the particular facts and circumstances surrounding the case." *State v. Blom*, 682 N.W.2d 578, 617 (Minn. 2004) (alteration in original) (citation omitted) (internal quotation marks omitted); *see also Trifiletti*, 6 N.W.3d at 94 (explaining that confrontation rights can be waived).

Although the law is clear that a defendant can waive their Confrontation Clause rights, neither we nor the United States Supreme Court has clearly held that a valid waiver requires a defendant to personally waive the right to confront an adverse witness. The United States Supreme Court has said that whether a defendant must *personally* participate in waiving a right—and thus whether counsel can waive on behalf of a client—"depend[s] on the right at stake." *United States v. Olano*, 507 U.S. 725, 733

---

[7]    Again, the State acknowledges that it did not establish that D.A. was unavailable for the purpose of this Confrontation Clause analysis.

9

(1993). And the Supreme Court has held that a defendant has "the ultimate authority" to personally make certain "fundamental decisions regarding the case," such as whether to plead guilty, exercise the right to a jury trial, retain counsel, testify in their own defense, or appeal a conviction. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see, e.g.*, *Brookhart v. Janis*, 384 U.S. 1, 7–8 (1966) (holding that a defendant's rights not to plead guilty and to a jury trial "cannot be waived by his counsel"); *Johnson v. Zerbst*, 304 U.S. 458, 464–65 (1938) (holding that a defendant must personally make an "intelligent and competent" waiver of his right to counsel); *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (holding that the right not to plead guilty includes a personal right to maintain innocence during the guilt phase of a capital offense even if counsel reasonably concludes that admitting guilt is the defendant's best chance to avoid the death penalty). The Supreme Court has not determined whether the right to confront witnesses is one of those fundamental decisions.[8] But it has stated, in dicta, that "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt

---

[8]     Over a century ago, in *Diaz v. United States*, the Supreme Court held that counsel can validly waive a defendant's confrontation right under some circumstances. 223 U.S. 442, 444–47, 449–53 (1912) (concluding that admitting an adverse witness's prior testimony where the defendant's attorney stipulated to and "placed in evidence the testimony disclosed by the record in question, and thereby sought to obtain an advantage from it …" did not violate the defendant's confrontation right). *Diaz* is not, however, an authoritative interpretation of the Sixth Amendment's Confrontation Clause because the case took place when the Philippines was a United States territory, and the Court did not decide the case under the United States Constitution, but under an analogous provision of the Philippine Civil Government Act. *See id.* at 449–51. Furthermore, the authoritative (not to mention persuasive) weight of this decision is unclear after *Crawford* and its progeny.

procedural rules governing the exercise of such objections." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 n.3 (2009).

Although Minnesota appellate courts, too, have held that personal waiver is required for a defendant to waive at least the rights to jury trial and to counsel, *see State v. Little*, 851 N.W.2d 878, 882 (Minn. 2014); *State v. Gant*, 996 N.W.2d 1, 6–7 (Minn. App. 2023), we have not decided whether a defendant must personally waive the confrontation right. But we have stated, in *Caulfield*, that "confrontation rights are *not* among those (right to a jury trial and right to counsel) that require an affirmative waiver in writing or on the record." 722 N.W.2d at 311 (emphasis added).

Nelson correctly points out that we have recognized confrontation as a fundamental right that district courts have an obligation to safeguard at trial. *See State v. Cassidy*, 567 N.W.2d 707, 711 (Minn. 1997); *State v. Dukes*, 544 N.W.2d 13, 19 (Minn. 1996) (stating that "[t]he right of confrontation is fundamental under both the federal and state constitutions"), *abrogated on other grounds by State v. Dahlin*, 695 N.W.2d 588, 595–97 (Minn. 2005). It is not, however, clear or obvious that a right is personal to the defendant solely because it is fundamental. Rather, the United States Supreme Court has stated that "the defendant must personally make an informed waiver" only for "*certain* fundamental rights." *Hill*, 528 U.S. at 114 (emphasis added). Although the Supreme Court has characterized the confrontation right as fundamental for decades, *see Pointer v. Texas*, 380 U.S. 400, 403 (1965), it has consistently omitted the confrontation right when articulating *which* fundamental rights a defendant must waive personally. *See, e.g., Jones*, 463 U.S. at 751 (explaining that the accused has a personal right to make "certain"

11

fundamental decisions "as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); *Hill*, 528 U.S. at 114 (mentioning only the right to counsel and right not to plead guilty as rights for which defendants must "personally make an informed waiver"); *McCoy*, 584 U.S. at 422 (explaining that decisions reserved to the defendant are "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal"). These omissions undercut Nelson's broad argument that the district court was plainly required to treat the confrontation right as personal because it is fundamental.

Given this lack of clarity in Sixth Amendment jurisprudence as to whether a defendant must personally waive their right to confrontation, we cannot conclude that the district court's admission of D.A.'s prior sworn testimony, including both direct and cross-examinations, without obtaining a personal waiver from Nelson clearly "contravene[d] case law." *Webster*, 894 N.W.2d at 787 (citation omitted) (internal quotation marks omitted). Because no binding authority "clear[ly]" or "obvious[ly]" required the district court to secure Nelson's personal waiver under these circumstances, any error by the district court was not plain. *See Olano*, 507 U.S. at 734. Nelson has therefore not met our standard for reversing his convictions under the applicable plain-error review.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

12