# IN THE SUPREME COURT OF IOWA

No. 20–0630

Submitted September 15, 2021—Filed February 11, 2022

**STATE OF IOWA,**

Appellee,

vs.

**RANDALL LEE HURLBUT,**

Appellant.

---

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary, Judge.

The defendant appeals his conviction for a misdemeanor operating-while-intoxicated charge entered after a trial at which the defendant was wholly absent. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, McDonald, and Oxley, JJ., joined. Appel, J., filed an opinion concurring specially.

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellant Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

**McDERMOTT, Justice.**

When the trial date for the misdemeanor defendant in this case finally arrived, he did not. The district court determined that the trial could proceed in his absence, and the jury found him guilty. In this appeal, we must decide whether a court may conduct a criminal trial on a misdemeanor criminal charge without the defendant present for any portion of the trial.

I.

On a Thursday morning in August 2017, Randall Hurlbut called 911 several times to ask why the police were following him. The emergency dispatcher responded that, in fact, no officers had been assigned to follow him. But those brief calls didn't end the dispatcher's affairs with Hurlbut that day: other calls about the driver of a white Buick Roadmaster "squealing tires and just acting crazy" would put Hurlbut at their center.

Dillon Kunkel was at work in a mechanic's garage when Hurlbut's car came "flying" into the shop and slammed on its brakes. Kunkel had previously worked with Hurlbut and immediately recognized him. Hurlbut asked Kunkel and others assembled to "get the snowman off the top of his car." But Kunkel could offer no help, presumably because it was a clear day in August and no snowman actually resided atop Hurlbut's car. Undeterred, Hurlbut revved his engine and sped away. Kunkel called the police.

A Le Mars police officer soon found a white Roadmaster matching the caller's description in a nearby parking lot, but the car bolted as the police cruiser pulled in behind. The police officer watched as the Roadmaster sped

between two cars heading opposite directions on a two-lane road, almost causing a crash. Now in pursuit with the cruiser's emergency flashers aglow, the police officer saw the Roadmaster race up a private driveway, through some pine trees in a yard, and toward a cornfield. Soon after blasting through a ditch and back onto the road, the Roadmaster circled back to the same parking lot from which the pursuit began and came to a stop. The police officer—familiar with Hurlbut from prior encounters and now approaching the car with a Taser in hand—ordered Hurlbut out of the car and to the ground. Hurlbut complied. When the police officer asked Hurlbut what he was doing, Hurlbut replied that he was trying to get someone off the roof of his car.

The police officer surmised that Hurlbut was under the influence of drugs. The officer had specialized training to recognize methamphetamine users and noted that Hurlbut had several indicia of methamphetamine abuse: the sunken-in face, the grinding teeth, the disheveled appearance, and the "off-the-wall" statements. He placed Hurlbut under arrest. During a drug recognition evaluation by another police officer soon after, Hurlbut cut off the assessment and said that he just wanted to give a urine sample. His sample tested positive for amphetamine and methamphetamine. The State charged Hurlbut with operating while intoxicated under Iowa Code section 321J.2 (2017), a serious misdemeanor.

The district court promptly appointed a lawyer to represent Hurlbut. But less than six weeks later, the lawyer moved to withdraw from the case, citing disagreements with Hurlbut about depositions and Hurlbut's complaints about

the lawyer's efforts on the case. During the court hearing on the motion to withdraw, Hurlbut (incarcerated elsewhere for a different crime and participating by phone) eventually hung up and refused to participate. The State resisted the motion to withdraw, as trial was set for six days later, arguing Hurlbut is just "a difficult client and his personality will continue to be a problem for any counsel that's appointed." The court denied the motion.

Yet the day before trial was to begin, Hurlbut announced he would not come to trial. He again requested new counsel, and expanded on his arguments about why he couldn't get along with his appointed lawyer. The appointed lawyer, for his part, identified a different lawyer who was willing to represent Hurlbut, and even got Hurlbut to agree to the switch. The district court permitted the first lawyer to withdraw, appointed the new lawyer, and postponed the trial to give new counsel time to prepare. But the court warned that it would have no patience with Hurlbut if he took the same combative tack with his new lawyer.

At a hearing in January 2018 to set the trial date, Hurlbut requested that the court appoint him another new lawyer. Hurlbut said that he and his new lawyer disagreed on trial strategy and, in particular, that the lawyer wouldn't pursue Hurlbut's theory that the police tampered with his urine sample. Hurlbut also asked that the district court postpone his trial until after his release from prison. The lawyer assured the court that he was investigating Hurlbut's claims but said his interactions with Hurlbut involved a level of difficulty rarely experienced with other clients. The district court denied the request for new counsel and scheduled trial for August.

Five days before the trial date, Hurlbut's second lawyer filed a motion to withdraw as counsel, stating that the attorney–client relationship had deteriorated and that "the attorney has no control over the client and [the] client is not trusting of anything that the attorney utters." The district court granted the second lawyer's withdrawal motion. The court offered Hurlbut the names of three attorneys it might appoint to see if he would have an objection to any of them. Hurlbut had none.

At the same hearing, the judge asked Hurlbut about a new trial date. Hurlbut again requested that trial be postponed until after his release from jail: "It would work out better for anybody—everybody so they didn't have to transport me, and I could show up on my own." Hurlbut said he would be in favor of a March 2019 trial date.

The court appointed Hurlbut a third new attorney and set trial for March 12, 2019. At the ensuing pretrial conference shortly before his trial date, Hurlbut requested that the court revoke his bond and that he be arrested so the sheriff would transport him to trial from his home. But the court noted that Hurlbut had been released without bond and, as a result, there was no bond to revoke. The State thereafter moved to continue the trial for an unrelated reason, which Hurlbut did not resist, and the court again postponed the trial. The court reset trial for July 23, with a final pretrial conference on July 12. The order specified that Hurlbut must appear in person at the final pretrial conference.

Three days before the final pretrial conference, Hurlbut filed an application to remove his third lawyer, this time claiming a conflict of interest with the

lawyer. On the date of the pretrial conference, at which the court was also to hear Hurlbut on his application to remove his lawyer, Hurlbut did not show. The court issued a warrant for his arrest, and again postponed the trial.

About five months later, in December, Hurlbut personally attended the rescheduled hearing on his application to remove his lawyer based on the alleged conflict. The court denied the application and set trial for February 4, 2020, with a pretrial conference set for January 31. The court told Hurlbut: "If you want to be at that final pretrial conference, that's fine. You don't have to be. I would prefer that you be here, but you will need to be here for the trial."

On the date of the pretrial conference, Hurlbut filed a motion to change the venue for his trial. He didn't appear for the pretrial conference. Nor did he appear for the hearing on his motion to change venue that the court held the day before trial. In the courtroom that day, Hurlbut's lawyer advised that Hurlbut had called his office and said that he planned on being there "tomorrow for the pretrial conference." But in fact, "tomorrow" was the date of the trial. The lawyer's secretary corrected Hurlbut that trial, not a pretrial conference, was the next day. His lawyer told the court that he believed Hurlbut planned to attend the trial. The court stated its plan to proceed with trial irrespective of whether Hurlbut in fact decided to appear.

At the first day of trial the next day, Hurlbut's lawyer informed the court that he'd personally spoken with Hurlbut after the court proceedings the day before, that Hurlbut claimed to have been mistaken about the schedule, and that Hurlbut claimed he could not find a ride to court to attend his trial. The lawyer

requested a trial continuance. Hurlbut's lawyer argued that Hurlbut had not affirmatively waived his right to be present at trial and that Hurlbut's "constitutional protection regarding due process and the right to confront the accuser" required his presence.

The State argued that Hurlbut had been physically present at a hearing seven weeks before at which the court set his trial date and thus had ample notice of the trial date. The State further suggested that Hurlbut's absence was voluntary based on his statements to his lawyer: when Hurlbut understood it was the date of his pretrial conference, he planned on showing up, yet when he found out it was his trial date, he suddenly couldn't make it. The State stated its preference that the court issue a bench warrant for Hurlbut's arrest. But in response to Hurlbut's lawyer's request to continue the trial, the State steadfastly resisted, arguing that Hurlbut's "confusion" regarding the dates of trial and pretrial was "on his part, not that any change was made about which he had not been informed."

The district court denied the motion to continue the trial. The court found no compelling circumstances or reason for Hurlbut's absence and thus determined that the trial could continue without Hurlbut present under Iowa Rule of Criminal Procedure 2.27.

The district court and counsel for both parties discussed trial issues that needed to be addressed because of Hurlbut's absence. The district court ordered that the court reporter transcribe portions of the jury selection (which in many trials are not transcribed). The district court also informed the jury at the outset

of jury selection, and again after the close of evidence when providing jury instructions, about Hurlbut's absence. The jury instruction read: "You will see that the defendant is not present in the courtroom. He is represented by an attorney and a case of this type can proceed without the presence of the defendant. You shall draw no conclusion or inference from the fact that the defendant is not present."

On the first day of trial, Hurlbut's lawyer participated in jury selection and made an opening statement on his client's behalf. He didn't question a few of the State's witnesses (including the 911 dispatcher and Kunkel) but did cross-examine the arresting officer, another police officer involved in collecting the urine specimen, and a State toxicologist who processed the urine sample. On cross-examination, Hurlbut's lawyer pursued his client's theory of tampering with the urine sample based on the officers' alleged dislike for Hurlbut. After the State rested, Hurlbut's lawyer renewed his objection to conducting the trial without his client present. The district court stood by its prior ruling.

The trial progressed to a second day to give Hurlbut the opportunity to appear and, if he wished, testify. He didn't show. In his closing argument, Hurlbut's lawyer reminded the jury: "You'll be instructed by the judge that you cannot hold it against the defendant that he chose not to testify, or even that he chose not to be present for trial today." The jury found Hurlbut guilty of operating while intoxicated. The district court sentenced him to 365 days incarceration, with credit for two days already served, along with a $1,250 fine, court costs, and restitution.

Hurlbut thereafter filed a motion in arrest of judgment. He argued that no judgment could be pronounced against him due to his absence at trial, and that the district court should have first given him a warning before moving forward with trial in his absence. He did not argue in his written motion in arrest of judgment, nor in his oral argument at the hearing on the motion, that he was absent because he could not arrange transportation to court or that he was given incorrect dates for the proceedings.

## II.

Hurlbut argues on appeal that the district court erred in holding that rule 2.27 permitted trial to proceed without him and that the State failed to establish that he waived his constitutional confrontation and due process rights. We review a district court's interpretation and application of the rules of criminal procedure for correction of legal error, *State v. Sanders*, 623 N.W.2d 858, 859 (Iowa 2001) (en banc), and constitutional claims de novo, *State v. Hendren*, 311 N.W.2d 61, 62 (Iowa 1981) (en banc).

Every criminal defendant possesses the right to due process through presence at his trial and the right to confront the State's witnesses against him. U.S. Const. amends. V, VI, XIV; Iowa Const. art. I, §§ 9, 10. Rule 2.27 implements the constitutional presence right. *State v. Myers*, 426 N.W.2d 614, 616 (Iowa 1988) (discussing the rule under its prior number). Subsection (1) of the rule states:

> *Felony or misdemeanor.* In felony cases the defendant shall be present personally or by interactive audiovisual closed circuit system at the initial appearance, arraignment and plea, unless a written arraignment form as provided in rule 2.8(1) is filed, and

> pretrial proceedings, and shall be personally present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. *In other cases the defendant may appear by counsel.*

Iowa R. Crim. P. 2.27(1) (second emphasis added).

We confront two sentences. The first begins with the words, "In felony cases the defendant shall be present personally," and proceeds to detail the methods of participation and portions of proceedings at which defendants must be present in felony cases. The second sentence makes clear it applies to the universe of cases other than felony cases: "In other cases the defendant may appear by counsel." *See* New Oxford American Dictionary (2d ed. 2005) (defining "other" as "used to refer to a person or thing that is different or distinct from one already mentioned or known about"). Restating these two sentences as logical equations draws out the starkness of the propositions stated. The first sentence provides: If *A* (felony cases), then *B* (defendant's presence required). The second sentence provides: If *not A* (other cases), then *not B* (defendant's presence not required).

To the extent one might claim confusion about whether "other cases" includes misdemeanor cases, the subsection's title immediately preceding the two sentences resolves it, making clear the sentences pertain to "[f]elony or misdemeanor" cases and thus leaving misdemeanors (and all other nonfelony cases) for inclusion in the second sentence. Indeed, this court has previously held that the "other cases" language refers to misdemeanors. *Wright v. Denato*, 178 N.W.2d 339, 342 (Iowa 1970) (interpreting nearly identical language in Iowa

Code § 775.2 (1966)). The district court thus correctly interpreted rule 2.27(1) to permit that, as to misdemeanor cases, so long as counsel is present, the rule doesn't require the defendant's personal presence.

The law's sanction of misdemeanor criminal trials in the defendant's absence bears a longstanding stamp of approval. For more than 150 years, Iowa's statutes have consistently permitted misdemeanor trials in the defendant's absence. *See* Iowa Code § 4706 (1860) ("If the indictment be for a misdemeanor, the trial may be had in the absence of the defendant, if he appear by counsel . . . ."); Iowa Code § 4351 (1873) (same); Iowa Code § 5338 (1897) ("If a felony is charged, the defendant must be personally present at the trial, but the trial of a misdemeanor may be had in his absence, if he appears by counsel."); Iowa Code § 13806 (1924) (same); Iowa Code § 777.19 (1977) (same); Iowa Code § 775.2 (1977) ("A person charged with a felony, or in custody without an attorney, must be personally present for arraignment, but in other cases he may appear therefor by counsel."); *see also* John P. Roehrick, *The New Iowa Criminal Code: A Comparison* 653 (1977) (noting the statute's language change from "misdemeanors" to "other cases" was an "[a]doption of the prerevised law").

Hurlbut's pitch that we must apply the second subsection of rule 2.27 in this situation, and not the first subsection, misses the strike zone. Rule 2.27(2) addresses situations when a defendant is present at the beginning of a trial or proceeding but then either voluntarily leaves or engages in disorderly conduct that warrants his exclusion from the remainder of the trial. In that situation, the rule permits the proceeding to continue without the defendant "[i]n all cases"—

even in felony cases—only after the defendant has first appeared at trial. But rule 2.27(2) doesn't apply to this case because Hurlbut was charged with a misdemeanor. Under rule 2.27(1), Hurlbut wasn't required to be present for any portion of his trial, either at the beginning or at any other time, for the court to proceed in his absence.

Hurlbut contends that the district court violated his constitutional rights of presence and confrontation when it proceeded with trial in his absence. Due process and confrontation are, without question, fundamental rights. *See State v. Wise*, 472 N.W.2d 278, 279 (Iowa 1991) ("A criminal defendant has a constitutional and statutory right to be personally present at every stage of trial."); *see also Illinois v. Allen*, 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."). But these rights may be lost through a defendant's voluntary conduct. *Hendren*, 311 N.W.2d at 62. A misdemeanor defendant who knows his trial date yet deliberately chooses, without good cause, to remain absent from his scheduled trial cannot then cry foul when the court follows through with the trial. The defendant, after all, doesn't have the exclusive interest in his criminal trial. The State also possesses a compelling interest in the orderly disposition of justice. *Barker v. Wingo*, 407 U.S. 514, 519–21 (1972) (describing the "societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused"). A defendant's right to attend trial, weighty as it is, doesn't supply him some attendant power to turn trial scheduling orders into

empty suggestions that he may ignore without consequence whenever he feels the urge.

The State, in the district court, didn't advance any specific legal doctrine in support of its argument that Hurlbut's knowing absence from trial abandoned his trial rights. On appeal, the State contends that any of several legal bases support the district court's decision: "Whatever the term applied, a relinquishment—or waiver, abandonment, loss, forfeiture—of trial rights are constitutionally tolerable" under the facts of this case. We believe that forfeiture provides the appropriate analytical framework under the circumstances of this case. *See* 6 Wayne R. LaFave, *Criminal Procedure* § 24.2(d), at 380 (4th ed. 2015) [hereinafter LaFave, *Criminal Procedure*] (finding "traditional waiver-of-rights theory" ill-suited to the analysis in matters involving voluntary absence at trial and thus that "it would seem preferable to view the matter in terms of forfeiture of a right by misconduct").

The record amply supports the conclusion that Hurlbut forfeited the right to attend his trial through his own conduct. *See id.* (discussing a defendant's "[f]orfeiture by voluntary absence" of the right to be present (citing *People v. Sanchez*, 482 N.E.2d 56, 60 n.* (N.Y. 1985) ("Forfeiture, unlike an express waiver which involves an evaluation of defendant's state of mind, occurs by operation of law and as matter of public policy."))). Hurlbut knew at least seven weeks in advance of his trial date (at a hearing that he personally attended) both when and where his trial would commence. Hurlbut's multiple statements, as relayed by his lawyer to the district court, indicated that he would appear on his trial

date—a date he mistakenly believed was the date of his pretrial conference. Only after he was informed that he'd actually be appearing for his first day of trial, and not his pretrial conference, did Hurlbut tell his lawyer that he couldn't find a ride to court. Hurlbut failed to present any evidence, even in his postverdict motions, that his absence was involuntary.

Unforeseen events that prevent a defendant from attending trial might well justify postponing a misdemeanor trial. *See id.* at 382–84. When a defendant fails to appear for trial, before concluding that the defendant's absence is voluntary, the court usually should provide defense counsel the opportunity to show that the defendant's absence is involuntary. *Id.*; *see also State v. Wanosik*, 31 P.3d 615, 624 (Utah Ct. App. 2001). The district court provided this opportunity to Hurlbut's lawyer on both days of the trial. The only explanation that the lawyer provided—that Hurlbut failed to secure transportation to court (for reasons otherwise unexplained in the record)—does not suffice to show that his absence was involuntary. Nonattendance at trial because of hospitalization, imprisonment on a different charge, "or other unforeseen emergency will be considered involuntary, but foreseeable problems will not." LaFave, *Criminal Procedure* § 24.2(d) (footnote omitted). A defendant's need to arrange transportation to court is among the foremost foreseeable steps in ensuring one's own participation at trial. When the State permits the release of defendants awaiting trial, it's the defendant's obligation—not the State's—to secure transportation to the courthouse. *People v. Connolly*, 111 Cal. Rptr. 409, 413–14 (Ct. App. 1973) (cited with approval in *People v. Concepcion*, 193 P.3d 1172, 1177

(Cal. 2008)) (declaring the defendant's car troubles insufficient to absolve the defendant from his "duty to do all he reasonably could do to get to the court as promptly as possible"); *State v. Simino*, 509 A.2d 1039, 1049 (Conn. 1986) (finding lawyer's statement that the defendant "didn't have transportation to court [because] his ride didn't show up" had no bearing on "the reasonableness of the trial court's exercise of its discretion in finding that the defendant had voluntarily absented himself from the trial").

Hurlbut, for his part, didn't mention any transportation problem, or offer evidence of any other basis that might establish good cause for his absence, when presented the opportunity in his posttrial motion in arrest of judgment. *See Hendren*, 311 N.W.2d at 62 (considering the evidence presented with the defendant's motion in arrest of judgment to determine whether the defendant absented himself without good cause). Indeed, Hurlbut's appeal brief makes no mention whatsoever of his motion in arrest of judgment. On the record before us, Hurlbut has failed to demonstrate his absence was something other than a voluntary forfeiture of his right to attend. *See United States v. Ornelas*, 828 F.3d 1018, 1022 (9th Cir. 2016) (stating that the absent defendant bore the burden of offering evidence to refute the trial court's finding of voluntariness); *State v. Bohn*, 570 P.2d 187, 190 (Ariz. 1977) (in banc) (declaring it the defendant's burden to demonstrate his trial absence was involuntary); *Hill v. State*, 722 S.E.2d 708, 711 (Ga. 2012) (same).

Hurlbut would have reasonably understood his court attendance obligations from his prior interactions with the criminal justice system. He also

had the assistance of legal counsel to help resolve any questions on this subject. The district court had previously warned Hurlbut in clear terms: "[Y]ou need to be here for the trial." Yet he had earlier refused to appear for trial on one of his initial trial dates. And another time he hung up on the court and refused to participate in a hearing. The district court's conclusion about Hurlbut's voluntary absence is reinforced by Hurlbut's earlier statements and actions in the case.

When warranted, trials in absentia under rule 2.27(1) may secure timely justice for the public and the defendant, and may prevent defendants from playing games with the prosecution or the court and causing unreasonable delays or other problems in the administration of justice. In this situation, Hurlbut's voluntary absence forfeited his right to be present at his misdemeanor trial, and the district court appropriately moved forward with trial in his absence.

**AFFIRMED.**

All justices concur except Appel, J., who concurs specially.

**APPEL, Justice (concurring specially).**

### I. Introduction.

An examination of the record reveals that Randall Hurlbut is a difficult defendant. On the day of his arrest for the crime for which he was charged in this proceeding, Hurlbut declared that a snowman was on top of his car. He has been in and out of rehabilitation. An examination of the record reveals that Hurlbut likely has mental health issues and a history of drug abuse that impairs his judgment.

But the question here is not whether Hurlbut is obstreperous and difficult to manage; the question here is whether the record in this case supports the district court's decision to try Hurlbut in his absence. The majority says yes based on a theory not advanced in the district court and based on facts not found by the district court.

### II. Context Overlooked by Majority.

There are aspects of the file that have been overlooked by the majority in this case that bear on Hurlbut's absence at trial. The record establishes that prior to trial, Hurlbut, who did not have a driver's license, had difficulties with transportation to court proceedings. In a motion filed on February 27, 2019, Hurlbut stated that he resided at the Salvation Army Adult Rehabilitation Center in Des Moines, that he was unable to drive, and that despite his best effort, he was unable to secure transportation from Des Moines to Plymouth County. At a pretrial conference on February 28, 2019, Hurlbut went so far as to seek to have

bond revoked so that he would be taken into custody and then the sheriff would transport him to court proceedings. The district court entered an order noting that there was no bond to revoke and denied the request. But the point is, this shows Hurlbut's difficulties in obtaining transportation to Plymouth County were present prior to the scheduled trial date in February 2020.

And there were communications difficulties between Hurlbut and his lawyers. Hurlbut did not appear for a July 12, 2019 pretrial conference as ordered by the court. As a result, the district court entered a bench warrant for his arrest. The district court later rescinded the bench warrant when it appeared that a letter sent to Hurlbut by his counsel informing him of the court date may have been sent to a facility where Hurlbut was no longer residing. So attorney–client communications problems about court dates were apparent from the record prior to trial.

After a number of continuances, trial was set for February 4, 2020. At a pretrial conference on December 16, 2019, the district court stated that trial would commence on February 4, 2020, and that a pretrial conference would be held the prior Friday. The district court told Hurlbut that while he did not need to attend the pretrial conference, he needed to be there for trial. To which Hurlbut responded, "Yep."

### III. No Findings Made on Hurlbut's Trial Absence.

Hurlbut, however, did not appear at the pretrial conference on January 31 and did not appear for the first day of trial on February 4. The district court

noted that Hurlbut's counsel had received communication from his client that the district court desired to put on the record.

Counsel for Hurlbut stated that Hurlbut was "I guess I'll just say mistaken about what was -- what and when these matters were scheduled." Hurlbut's counsel noted that "he's currently residing in Fort Dodge and did not think he would be able to find transportation to be able to get here this morning." Hurlbut's counsel then moved for a continuance based on his client's absence.

Counsel for the State responded:

> [I]t's my understanding that Mr. Hurlbut thought today was the pretrial conference. It has always been the date and time set for trial; it has never been the date and time set for pretrial conference. *So I think it was accurate that it was confusion on his part*, not that any change was made about which he had not been informed, and I think it's important for the record to show that.

(Emphasis added.) So, the State told the court it "[is] accurate that it was confusion on his part." And "based on that [confusion on his part], I would resist a continuance." The State then asserted that "there was a time when he thought it was the pretrial conference when he thought he was going to be here."

The district court turned to Hurlbut's counsel and asked, "[D]o you believe that your office or you have informed or had informed Mr. Hurlbut of the trial date and the pretrial conference dates in the past?" To which counsel replied, "Yes, Your honor."

That is the sum and substance of the record developed on the first day of trial. Neither Hurlbut's counsel nor counsel for the State mentioned waiver, forfeiture, or even the constitutional rights of Hurlbut.

The district court then denied the motion to continue. Although the majority states otherwise, the district court made no findings of fact on the first day of trial. The district court ruled:

> So I am going to deny the motion to continue. And so I know under Rule 2.27 and a particular subpart under that, in a case where we have a felony pending, we cannot proceed without the defendant's presence absent certain circumstances which don't apply to misdemeanors. This is a misdemeanor only. Actually, there are three misdemeanors that are still pending set for today.
>
> And so as much as I would prefer the defendant to be here, the rule allows us to proceed without his presence, and so I intend to do that absent very compelling circumstances or reasons.

The district court clearly stated its conclusion. But it made no factual findings.

Later in the first day of trial, the parties made an additional record. At this point, counsel for Hurlbut stated, "Mr. Hurlbut, in our discussion, did not consent verbally to me to waive his presence for trial. I just -- that wasn't said on the record. I wanted to make sure that was in there so it's clear." Further, counsel now found that "there's some distinction drawn" between the rule and constitutional protections regarding due process and the right to confront.

The State responded not by asserting waiver, and certainly not "forfeiture," but by requesting that a warrant for Hurlbut's arrest be issued, ensuring his presence at trial. The State suggested that trial could begin as soon as the next day upon Hurlbut's arrest. The State's counsel noted that an arrest warrant was not "typically the way we do things" but that it was the State's preference "because it would ensure Mr. Hurlbut's presence, *and then his rights would be protected as far as confrontation*." (Emphasis added.)

The position of the State, to its credit, was not to seek to forfeit Hurlbut's rights, but to protect them. But the majority is not satisfied with the State's advocacy and develops an argument not made by the State—namely, that Hurlbut *forfeited* any right he may have had to be present.

So at this point, Hurlbut's counsel has introduced due process and confrontation issues under unspecified constitutional provisions and has made clear that his client did not waive his constitutional right to be present. Having already conceded in argument that it was accurate that Hurlbut was "confused," the State did not assert "forfeiture" or "waiver" arguments. In fact, the State's position implied the opposite by asking the court to issue an arrest warrant to preserve the defendant's right of confrontation.

The ruling on the renewed motion does not appear until the second day of trial. At that point, Hurlbut's counsel rose to "renew the motion or objection to proceeding with the defendant not being present for trial at this time . . . [f]or all the reasons previously stated as if they [are] fully restated at this time." When asked if the State took the same position, the State declared, "Yes, Your honor." And the district court declared, "The ruling will remain the same. The motion is denied."

The bottom line is that there were no adequate findings of fact by the trial court and certainly no mention by the State of the new and improved doctrine of forfeiture that the majority sees this case as an opportunity to develop. And while the State opposed a continuance, it did not seek to have trial proceed without

Hurlbut but instead sought to have a bench warrant issued and have him brought to court.

**IV. Defects in Majority Legal Analysis.**

**A. Problems with Forfeiture**. The majority sails far out to sea by developing a doctrine of "forfeiture" that was not raised by the State below and is developed by the majority from above. Remember that the State in the district court (1) did not raise the doctrine of forfeiture and (2) did not claim knowing waiver ("it [is] accurate that Hurlbut was confused") but instead (3) sought the issuance of a bench warrant to protect Hurlbut's right of confrontation (and due process, too). The majority's work-around on appeal is to develop a forfeiture theory not raised or sought by the State in the proceedings below.

The majority concedes that the State did not develop any legal doctrine below, but to the majority, it appears that this does not matter. The State, apparently, does not have to raise a legal theory in the district court to have it preserved by this court on appeal. This courtesy is not ordinarily extended to defendants. It seems the State is a special litigant to which ordinary error preservation rules do not apply.

It should be noted, the injection of the forfeiture issue on appeal has its complications. As noted by one commentator, the cases utilizing forfeiture by wrongdoing "ha[ve] produced disparate conclusions about not only the specific contents of the rule of forfeiture by wrongdoing, but also about when the rule should apply, how broadly the rule should apply, and whether forfeiture by wrongdoing addresses hearsay as well as constitutional objections." Timothy M.

Moore, *Forfeiture by Wrongdoing: A Survey and an Argument for Its Place in Florida*, 9 Fla. Coastal L. Rev. 525, 534 (2008). Does forfeiture require specific intent? What is the role of prior bad acts? What is the standard of proof? The development of the doctrine of forfeiture requires advocacy and a proper record directed to the doctrine in the district court.

In any event, from a legal perspective, our cases speak in terms of waiver, not forfeiture. *State v. Hendren*, 311 N.W.2d 61, 62 (Iowa 1981) (en banc). Forfeiture of the right to confrontation clearly applies when there is disruptive misconduct at trial. *Illinois v. Allen*, 397 U.S. 337, 343 (1970). But when a criminal defendant is a no-show at trial, the question is usually framed as one of waiver. *Hendren*, 311 N.W.2d at 62.

*State v. Hendren* has been cited by five unreported Iowa Court of Appeals cases on the question of how to handle absence of a criminal defendant at trial, and all of the cases utilized the waiver framework.[1] Further, Iowa cases prior to *Hendren* frame the issue as one of waiver.[2] Thus, the *Hendren* waiver approach is firmly found in Iowa law, both before *Hendren* and after it.

---

[1] *See State v. Bell*, No. 19–0161, 2020 WL 2487608, at *2 (Iowa Ct. App. May 13, 2020) ("We review de novo a court's determination that a defendant voluntarily waived his or her constitutional right to be present at trial."); *State v. LePon*, No. 18–0777, 2019 WL 2369887, at *7 (Iowa Ct. App. June 5, 2019) (citing *Hendren* and reviewing his right to be present de novo but finding any error harmless); *State v. McCann*, No. 17–0175, 2018 WL 1182766, at *1 (Iowa Ct. App. Mar. 7, 2018) (citing *Hendren* and noting de novo review of voluntariness); *State v. Thompson*, No. 15–1463, 2016 WL 6270237, at *6 (Iowa Ct. App. Oct. 26, 2016) (citing *Hendren* for proposition that right to be present may be waived and reviewing de novo).

[2] *See, e.g.*, *State v. Anderson*, 308 N.W.2d 42, 48–49 (Iowa 1981) (discussing "waiver" issue); *State v. Moore*, 276 N.W.2d 437, 440 (Iowa 1979) ("Viewed as a waiver of constitutional rights, defendant's conduct has to meet certain criteria. His relinquishment of the right to be present at his trial must be knowing, intelligent and voluntary.").

Our law was expressed in *State v. Moore*:

> Viewed as a matter of constitutional rights, defendant's conduct has to meet certain criteria. His relinquishment of the right to be present at his trial must be knowing, intelligent, and voluntary. Courts indulge every reasonable presumption against waiver. *Collier v. Denato*, 247 N.W.2d 236, 239 (Iowa 1976). The burden is on the State to show a valid waiver by a preponderance of the evidence. *State v. Hilpipre*, 242 N.W.2d 306, 309 (Iowa 1976).

276 N.W.2d 437, 440 (Iowa 1976) (first citation omitted).

**B. Problems with Waiver.** Under *Hendren*, in order to establish waiver, the defendant must (1) "be aware of the processes taking place," (2) be aware of their "right and [their] obligation to be present," and (3) "have no sound reason for remaining away." 311 N.W.2d at 62 (quoting *Cureton v. United States*, 396 F.2d 671, 676 (D.C. Cir. 1968) (approved by the United States Supreme Court in *Taylor v. United States*, 414 U.S. 17, 19–20 (1973))).

Had the prosecution raised the traditional three-pronged-waiver test under *Hendren*, the district court no doubt would have focused on the third prong of *Hendren*—namely, whether there was a sound reason for Hurlbut's absence. Based on what we know, there may have been a problem on the third *Hendren* prong. It is entirely possible that a person without means might have difficulty arranging for ninety-three miles of travel on short notice.

There is caselaw for the proposition that bona fide transportation problems may provide the basis for absence at trial. Consider *State v. Cassidy*, 567 N.W.2d 707 (Minn. 1997). In *Cassidy*, the defendant failed to appear for the second day of trial. *Id.* at 709. The defendant explained that the car he had intended to borrow was not available because of an emergency in the owner's family and that

he was not able to arrange transportation to trial. *Id.* In this case, the Minnesota Supreme Court held that the trial court failed to set forth specific findings of fact to support its conclusion that the defendant's absence was voluntary. *Id.* at 710. The Minnesota Supreme Court emphasized that when a right as fundamental as the right to be present at one's trial was at stake, the trial court had an obligation to safeguard that right. *Id.* at 711; *see also Black v. United States*, 529 A.2d 323, 324 (D.C. 1987) (considering circumstances where defendant's absence occurred when his car battery was stolen and he had to use public transportation); *United States v. Camacho*, 955 F.2d 950, 954 (4th Cir. 1992) (noting that defendant was late to court due to traffic problems); *United States v. Mackey*, 915 F.2d 69, 73–74 (2d Cir. 1990) (noting that defendant had car trouble that delayed arrival).

In short, persons without means may well have problems arranging for transportation, particularly on short notice. Hurlbut was bouncing around from institution to institution during the pendency of the charges. He did not drive. He may well have worn out his welcome with friends, if he had any friends. It is not likely that there was a bus to catch from Fort Dodge to LeMars. Who knows what the facts would show if there was a real effort to determine the facts and make factual findings based on the evidence?

### C. Lack of Fact-finding/Lack of Development of Facts.

1. *No fact-finding by district court.* Did Hurlbut have a sound reason for not appearing at trial? *See State v. Beloved*, No. 14–1796, 2015 WL 8390222, at *2–3 (Iowa Ct. App. Dec. 9, 2015). Aside from the difficulties mentioned above, examination of the record reveals that the district court did not engage in fact-

finding. It did not find facts necessary to support forfeiture—perhaps because the State did not argue forfeiture to the district court. It did not make the fact-finding necessary to support waiver—perhaps because the State conceded Hurlbut was "confused" and, as a result, did not press waiver but sought an arrest warrant to protect Hurlbut's right to confrontation. Instead, the district court simply denied Hurlbut's motion to continue.

That just does not cut it. The majority cites the LaFave treatise, which describes forfeiture cases. But the majority omits LaFave's admonition that "[w]henever a defendant does not appear, either at trial's outset or mid-trial, the court must be certain that his absence was voluntary before proceeding." 6 Wayne R. LaFave, *Criminal Procedure* § 24.2(d) (4th ed. 2015). I think the Supreme Court of Minnesota got it right in *Cassidy*, 567 N.W.2d 707. The *Cassidy* court held that "courts must indulge every reasonable presumption against the loss of constitutional rights." *Id.* at 709 (quoting *Allen*, 397 U.S. at 343). The *Cassidy* court further stated that "the trial court must be extremely cautious in determining whether that absence is voluntary and should set forth with specificity its rationale for finding the right waived and the facts supporting that rationale." *Id.* at 710.

The *Cassidy* court is not alone in this. In *State v. Thomson*, the Supreme Court of Washington set out a three-part inquiry for the trial courts. 872 P.2d 1097, 1100 (Wash. 1994) (en banc). A trial court is to:

> (1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) [make] a preliminary finding of voluntariness (when

> justified), and (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed.

*Id.* (alterations in original). Obviously, no such inquiry happened here. In cases involving defendants not being present when the trial commences, the Washington court set the line firmly. In *State v. Hammond,* the Supreme Court of Washington ruled that the federal rule and its state equivalent did not authorize commencing trial without the defendant. 854 P.2d 637, 640 (Wash. 1993) (en banc).

The majority cites *United States v. Ornelas,* 828 F.3d 1018 (9th Cir. 2016), in support of its position of "voluntary forfeiture." But the word "forfeiture" does not appear in the case. Additionally, in *Ornelas,* the district court did make a factual finding that defendant had absented himself from the proceedings. *Id.* at 1021–22. Further, this finding was supported by the record. *Id.* Here, the district court never made a factual finding as to the voluntariness of Hurlbut's absence. Upon noticing Hurlbut did not appear at his own trial, the State asked the court to issue a bench warrant rather than proceed to trial without Hurlbut. The court declined the State's invitation for a warrant and instead proceeded with the trial without even addressing Hurlbut's reasons for his absence.

In insisting on fact-finding based on a developed record, I do not require district courts to embrace flimsy excuses or bogus assertions as legitimate reasons for missing a court date in a criminal matter. But the right to be present in the courtroom is a very precious right for any criminal defendant, including

Hurlbut. Appropriate, methodical fact-finding is required in this case, as in any other case, on the question of good cause for his absence.

2. *Abuse of discretion standard.* The majority announces an abuse of discretion standard when reviewing decisions of a trial court to proceed to trial in the absence of the defendant. But when findings of fact are required that involve constitutional questions, our review is de novo. *See, e.g., Bomgaars v. State*, 967 N.W.2d 41, 46 (Iowa 2021); *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018); *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). To the extent the majority believes there are no facts to be found, but only discretion to be exercised, it commits error. Iowa appellate cases repeatedly emphasize findings of fact by trial court judges in connection with the absence of a criminal defendant at trial.[3]

3. *Burden of proof.* The majority cites out-of-state cases for the proposition that the burden of proof with respect to lack of presence rests with Hurlbut. For instance, the majority cites *Hill v. State* for the proposition that it is the defendant's burden to show that their absence was involuntary. 722 S.E.2d 708, 711 (Ga. 2012). But according to Iowa precedent in *Moore*, the burden of proof rests with the State. *See* 276 N.W.2d at 440 ("The burden is on the State to show a valid waiver by a preponderance of the evidence."). In choosing between the Georgia authority and the Iowa authority, I would go with the Iowa authority.

---

[3]See previous footnote.

The majority also cites *Ornelas* for the proposition that an absent defendant bore the burden of going forward and offering evidence to refute the voluntariness finding of the trial court. 828 F.3d at 1022. Here, there was no voluntariness finding by the district court. Moreover, the majority omits a more important aspect of *Ornelas.* In *Ornelas,* the United States Court of Appeals for the Ninth Circuit recognized the Seventh Circuit's emphasis on the role of the district court in getting to the bottom of voluntariness issues if plausible explanations appear in the record. *Id.* at 1021–22. Where plausible explanations are in the record, the district court is to explore and confirm the reasons for his absence. Here, as I have outlined above, I see plausible reasons for nonattendance. And it is likely the State did too. That is why the State asked the district court to issue a bench warrant and not to charge ahead in the defendant's absence.

Finally, it seems to me the approach to waiver in the Seventh Circuit in *United States v. Achbani,* 507 F.3d 598, 601 (7th Cir. 2007), is more consistent with Iowa law on the burden of proof issue than *Ornelas.*

4. *Inadequacy of statements of counsel.* I am also concerned about the use of statements from Hurlbut's counsel as a substitute for the fact-finding ordinarily required on constitutional questions of waiver. *See United States v. Ward,* 598 F.3d 1054, 1060 (8th Cir. 2010). There is also authority for the proposition that it is the responsibility of *the trial judge* to find out not only where the defendant was but also why the defendant was absent. *Ornelas,* 828 F.3d at 1021; *Cassidy,* 567 N.W.2d at 710; *United States v. Rogers,* 853 F.2d 249, 252

(4th Cir. 1988). That did not happen here. The district court did not hear at all from Hurlbut. Is the question of his waiver of constitutional rights something that can be resolved by lawyers and judges in a distant courtroom without hearing from him? Under the circumstances presented here, I think not.

**D. Motion in Arrest of Judgment.** The majority correctly points out that Hurlbut filed a motion in arrest of judgment raising the due process and confrontation issues related to his absence at trial. But Hurlbut, who was present at the hearing, did not claim he had transportation problems and did not put on any evidence related to his absence at trial. Under these circumstances, it would seem odd to remand this matter for a hearing when Hurlbut already had an opportunity to make his case regarding absence from trial. Given the fact that he had an opportunity to be heard on the question at the time of the hearing on the motion in arrest of judgment, I conclude that Hurlbut cannot show that he has been prejudiced by the district court's prior precipitous action. As a result, I agree he is not entitled to relief.

**V. Conclusion.**

On balance, I would hold that the State has not preserved its argument regarding forfeiture by misconduct by failing to raise it in the district court. But because Hurlbut had an opportunity at the hearing in arrest of judgment to present his case on the reasons for his absence and failed to do so, I conclude there is no basis for a remand now for a second opportunity for a posttrial hearing.

I therefore concur with the result in this case.